**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **USCIC OF NORTH CAROLINA RSA #1, INC.** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 07 C 5746 |
| **RAMCELL, INC.** | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On October 10, 2007, Plaintiff USCIC of North Carolina RSA #1, Inc. ("USCIC") filed a five count complaint seeking injunctive and other relief against defendant Ramcell, Inc. ("Ramcell"). USCIC simultaneously filed a motion for preliminary injunction. On October 29, 2007, Ramcell filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer to a more convenient forum (the "motion to dismiss or transfer"). USCIC seeks to enjoin Ramcell from enforcing a capital call that issued on September 7, 2007, for which payment is due on November 6, 2007. For the following reasons, I find that USCIC has made a *prima facie* showing that personal jurisdiction over Ramcell exists and, therefore, I deny the motion to dismiss or transfer. I also preliminarily enjoin Ramcell from enforcing the September 7 capital call, from diluting USCIC's partnership interest for failure to pay the requested capital, and from issuing any additional capital calls for the duration of this action.

I.

USCIC is a Delaware corporation with its principal place of business in Chicago, Illinois. Ramcell is a Florida corporation with its principal place of business in Kentucky. USCIC and Ramcell are each general partners with equal 50% interests in North Carolina RSA 1 Partnership (the "Partnership"). Ramcell is also the managing partner of the Partnership. The Partnership is a

Delaware general partnership, which provides cellular telephone service in North Carolina.

USCIC and Ramcell have been partners since 1995. Ramcell has regularly sent mail to USCIC in Chicago, including financial statements since 1998, capital distributions from 2001 to 2004, and capital calls in 2006 and 2007. Ramcell also has communicated with USCIC employees in Illinois via telephone and electronic mail regarding Partnership operations.

The parties' relationship is governed by the Agreement Establishing North Carolina RSA 1 Partnership and all amendments thereto (the "Partnership Agreement"). Under Sections 9.1 and 9.2 of the Partnership Agreement, as managing partner, Ramcell must prepare an annual budget by November 1 of each year for both partners' approval or amendment at a meeting to take place no later than December 20 of each year. USCIC did not approve the budget for 2007 originally proposed by Ramcell and Ramcell never provided a revised proposed budget. Pursuant to Section 5.2 of the Partnership Agreement, as managing partner, Ramcell may require the investment of additional capital contributions. Section 5.2 states that such capital contributions "may only be requested consistent with the annual budgets prepared under Section 9.2 and only if they are needed to meet the financial obligations of the Partnership and operating and management expenses as set forth in Section 4.2."

On February 20, 2006, Ramcell issued a capital call in the amount of $400,000.00, and USCIC paid its $200,000.00 share on March 16, 2006. On June 30, 2006, Ramcell issued a capital call in the amount of $500,000.00, and USCIC paid its $250,000.00 share on July 18, 2006. On December 5, 2006, Ramcell issued a capital call in the amount of $200,000.00; USCIC paid its $100,000.00 share on February 2, 2007, but indicated that its payment was made under protest. On December 22, 2006, Ramcell issued a capital call in the amount of $250,000.00; USCIC paid its $125,000.00 share on February 16, 2007, but indicated that its payment was made under protest. On April 25, 2007, Ramcell issued a capital call in the

2

amount of $400,000.00; USCIC paid its $200,000.00 share on June 22, 2007, but indicated that its payment was made under protest. Finally, on September 7, 2007, Ramcell made the capital call presently at issue in the amount of $3,450,000.00. Under Section 5.2 of the Partnership Agreement, USCIC's $1,725,000.00 share is due not less than 60 days from the date of the notice, or on November 6, 2007. USCIC alleges that, because a final budget for 2007 was never approved, the September 7 capital call (as well as the other capital calls)[1] was not requested consistent with the annual budget as required under Section 5.2 of the Partnership Agreement.

II.

Ramcell moves to dismiss this action for lack of personal jurisdiction. A federal court exercising diversity jurisdiction relies on the law of personal jurisdiction applicable in the state in which it sits. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). USCIC has the burden of establishing a *prima facie* basis for personal jurisdiction over Ramcell, a non-resident defendant. *See Commerce Trust Co. V. Air 1st Aviation Companies, Inc.*, 366 Ill. App. 3d 135, 140 (Ill. App. Ct. 2006). USCIC has satisfied its burden.

The Illinois long-arm statute allows an Illinois court to exercise personal jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209©). Accordingly, I need only consider whether exercising personal jurisdiction over Ramcell would be proper under Illinois and federal due process requirements. *See Hyatt*, 302 F.3d at 714-15. Under the Due Process Clause of the Illinois Constitution, a court may exercise jurisdiction "'when it is fair, just, and reasonable to require a

---

[1]In its Complaint, USCIC alleges that Ramcell did not obtain the necessary budget approvals for 2006 and 2007. For purposes of the instant motion, I only consider the lack of a final budget for the year 2007.

nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois.'" *Id.* at 715 (quoting *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (Ill. 1990)). No operative difference exists between the federal due process and Illinois due process analyses. *See id.*

The exercise of personal jurisdiction satisfies federal due process requirements when the defendant has sufficient minimum contacts with the forum state. *Id.* at 716; *Commerce Trust*, 366 Ill. App. 3d at 143. Such minimum contacts must involve an act by which the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *Commerce Trust*, 366 Ill. App. 3d at 143. Sufficient minimum contacts and purposeful availment are found when the defendant has deliberately reached out and created continuing obligations between itself a forum resident. *Id.* "The defendant's conduct and connections with the state must be such that 'he should reasonably anticipate being haled into court there.'" *Id.* (citation omitted) Additionally, the plaintiff must show that the cause of action arises out of or is related to the defendant's minimum contacts with the forum state. *Hyatt*, 302 F.3d at 716; *see Commerce Trust*, 366 Ill. App. 3d at 143. Finally, once the plaintiff has established that the defendant purposely directed its activities to Illinois, the defendant must present a compelling argument that litigating here would be unreasonable. *Commerce Trust*, 366 Ill. App. 3d at 146.

First, USCIC has shown that Ramcell has sufficient minimum contacts with Illinois. A party "has accepted the privilege of conducting business" in Illinois and "can reasonably be required to litigate" here if it engaged in significant activities in Illinois or created continuing obligations with an Illinois citizen. *Id.* at 144. Here, Ramcell has created a continuing obligation with USCIC by virtue of the parties' ongoing business relationship. *See id.* The parties are engaged in a business relationship that has spanned

nearly thirteen years. During the course of this relationship, Ramcell has routinely communicated with its partner at USCIC's principal place of business in Illinois via mail, telephone, and electronic mail regarding Partnership business.

Second, the instant action arises out of Ramcell's contacts with Illinois. "An action arises out of a defendant's contacts with a forum state where that cause "'lie[s] in the wake of the commercial activities by which the defendant submitted to the jurisdiction' of the forum state." *Id.* at 145 (citations omitted). This case arises out of Ramcell's ongoing business relationship with USCIC and Ramcell's alleged breach of the underlying Partnership Agreement.

Finally, it would not be unreasonable to require Ramcell to litigate in Illinois. USCIC has shown that Ramcell purposely directed its activities to Illinois by entering into an ongoing business relationship with USCIC, during which Ramcell communicated with USCIC on numerous occasions in Illinois. Ramcell, in turn, has not argued that it would be unreasonable to litigate this case here.

III.

In the alternative to dismissal for lack of personal jurisdiction, Ramcell moves to transfer this action to a federal court in North Carolina on *forum non conveniens* grounds. Transfer is appropriate under § 1404(a) where (1) venue is proper in the transferor court; (2) venue is proper in the transferee district; and (3) the transfer will serve the convenience of the parties and witnesses as well as the interests of justice. In determining whether a forum is more convenient and whether a transfer would be in the interest of justice, I must consider the private interests of the parties as well as the public interest of the court. *N. Shore Gas Co. v. Salomon, Inc.*, 896 F. Supp. 786, 791 (N.D. Ill. 1995). The factors relevant to the parties' private interests include (1) the plaintiff's choice of forum; (2) the situs of

5

material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses. *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 835 (N.D. Ill. 2004); *Coll. Craft Cos., Ltd. v. Perry*, 889 F. Supp. 1052, 1054 (N.D. Ill. 1995). The factors relevant to the public interest of the court include the court's familiarity with the applicable law and concerns relating to the efficient administration of justice. *Id*. at 1056. The burden is on the moving party to demonstrate that the balance of the factors weighs heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another. *Fink v. Declassis*, 738 F. Supp. 1195, 1198 (N.D. Ill. 1990) (citation omitted). Based on the information provided by Ramcell, I see no reason why North Carolina would be a more appropriate forum.

First, a plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) (citations omitted). A plaintiff's choice of forum is afforded less deference, however, when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events. *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (citation omitted). Here, the Northern District of Illinois is the location of USCIC's principal place of business. North Carolina is neither party's place of incorporation nor principal place of business, but rather the location of the cellular telephone service provided pursuant to the Partnership Agreement. I see no reason to disturb USCIC's choice of forum where neither party has stronger connections to North Carolina.

6

Second, North Carolina is not the situs of material events. The material events relate to the business interactions between the parties and Ramcell's alleged breaches of the Partnership Agreement. Other than one Partnership meeting sometime in North Carolina in 2006, such events took place in Illinois and Kentucky.

Third, the relative ease of access to proof is no greater in North Carolina than Illinois. Ramcell explains in detail, and supports with an affidavit, that business records, including the financial and other materials sent to USCIC in Illinois, and the Ramcell employees who were involved in preparing this information are all located in Kentucky. Ramcell then generally states, without any support, that business records and other sources of proof are located in North Carolina. Based on this, it appears that the majority, if not all, of the relevant information is located outside of North Carolina.

Fourth, it is not more convenient for the parties to litigate in North Carolina. Neither of the parties are located there. USCIC's principal place of business is in Illinois and Ramcell's principal place of business is in Kentucky.

Fifth, Ramcell has not shown that it is more convenient for the witnesses if the case proceeds in North Carolina. Ramcell generally asserts that potential witnesses, namely individuals who operate the Partnership business, are located in North Carolina. Ramcell has not identified any such potential witnesses. Meanwhile, Ramcell has indicated that other witnesses, who were involved with the preparation of the financial information that was sent to USCIC, are located in Kentucky, not North Carolina.

Finally, the public interest factors do not weigh in favor of transfer. USCIC's breach of contract claim is governed by Delaware law. Presumably, federal courts in Illinois and North Carolina are equally capable of applying Delaware law to resolve this action efficiently and effectively.

IV.

To obtain a preliminary injunction, USCIC must show: (1) it is

7

reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm that, absent injunctive relief, outweighs the irreparable harm that Ramcell will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (citing *Joelner v. Vil. of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004)). USCIC has met its burden to show that a preliminary injunction is appropriate.

First, USCIC has shown that it is reasonably likely to succeed on the merits. USCIC states, and Ramcell does not seem to dispute, that Delaware law governs its breach of contract claim. Under Delaware law, to establish a breach of contract, USCIC must demonstrate: (1) the existence of the contract; (2) breach of an obligation imposed by the contract; and (3) resulting damages. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Ramcell does not deny the existence of the Partnership Agreement. Nor does Ramcell disagree that no 2007 budget exists. Rather, Ramcell blames USCIC's corporate parent, United States Cellular Corporation ("U.S. Cellular"), for conduct Ramcell claims caused the Partnership's budget deficit. Ramcell also faults USCIC for its unilateral rejection of the proposed budget. But, by its terms, the Partnership Agreement requires approval of the budget by two-thirds of the interests in the Partnership, or in this case both partners. This did not happen. Moreover, Ramcell concedes that the Partnership Agreement requires that any additional capital contributions be consistent with the annual budget. Ramcell instead argues that such contributions need not be included in the budget. But that is not USCIC's claim. In fact, USCIC argues that, in the absence of a budget, additional capital contributions necessarily cannot be consistent therewith. Accordingly, all such capital contributions, including funds requested pursuant to the September 7 capital call, breach the Partnership Agreement because no budget exists. USCIC is damaged by having to either pay capital contributions imposed in violation of the Partnership Agreement or

8

suffer dilution of its interest if payment is withheld.

Second, USCIC has shown that no adequate remedy at law exists and that it would suffer irreparable harm if an injunction were not granted. Conduct that unnecessarily frustrates efforts to obtain or preserve a party's right to participate in a business' management may constitute irreparable harm. *See Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 563 (S.D.N.Y. 2006) (finding if defendants regained positions of control, then plaintiffs' efforts to obtain or preserve right to participate in management of companies would be irreparably harmed), *aff'd* Nos. 05-2862, 05-4952, 06-2164, 06-2176, 06-2709, 06-3567, 2007 WL 2492139, at *5 (2d Cir. Aug. 30, 2007) (affirming order enjoining defendants from, *inter alia*, seeking to reinstate company's directors and officers before Brazilian court). A party also may be irreparably harmed by having its stake in a business diluted or by losing control of a business. *Id.* The irreparable harm to USCIC is the dilution of its ownership interest in the Partnership if it fails to pay its share of the September 7 capital call. Ramcell argues that a dilution is compensable in the corresponding dollar amount by which USCIC's ownership interest will be reduced for failing to meet the September 7 capital call. That oversimplifies the issue because there are attendant ownership rights, such as sharing in Partnership profits and voting on various matters in proportion to ownership interest, which also will be lost if USCIC's interest is diluted.

Third, the balance of the hardships favors granting an injunction. Without injunctive relief, USCIC must pay $1,725,000.00 or forego a portion of its 50% interest in the Partnership. With injunctive relief, Ramcell will not receive the additional funds sought on November 6. Ramcell contends that, without the additional funds, the Partnership "eventually" will be unable to pay suppliers, which in turn "eventually could cause" the Partnership to default on other obligations and even to cease operations. Ramcell provides no specific evidence, however,

9

suggesting imminent danger to the business if it does not receive USCIC's payment on November 6. Rather, Ramcell merely speculates as to eventual harm to the business. On balance, the hardship to Ramcell is less than to USCIC.

Finally, a preliminary injunction will not harm the public interest. Without deciding whether the provision of cellular telephone service pursuant to federal license serves the public interest, I nevertheless determine that any such interest is not threatened by the preliminary injunctive relief granted today.

V.

For the foregoing reasons, I deny the motion to dismiss or transfer. Additionally, I preliminarily enjoin Ramcell from enforcing the September 7 capital call, from diluting USCIC's partnership interest for failing to pay the requested capital, and from issuing any additional capital calls for the duration of this action.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: November 6, 2007.

10